33 A.3d 611

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Daniel GOODSON, III, Appellant.**

Supreme Court of Pennsylvania.

Argued April 12, 2011.

Decided Dec. 21, 2011.

William C. Kaczynski, Pittsburgh, for Daniel Goodson, III.

Gregory Joseph Simatic, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice EAKIN.

In January, 2001, appellant's car was in a collision.[1] His insurer totaled the aging New Yorker, then made a just

---

1. There is set forth in the trial court's opinion a fuller recitation of the case's protracted history and facts, adopted by the Superior Court. Nevertheless, the facts necessary to resolve the issue accepted for review are few, undisputed, and fully contained herein.

division

of the value of the insurance claim, sending $6,289 to the lender;

the balance of $135, to appellant they made tender.

And thus the matter terminated, or so one might have thought,

but that was not to be, when Goodson's later schemes were caught.

Appellant was unhappy with his meager share, we guess—comparing the two payouts, his disbursement was much less—so six months later, in July, Mr. Goodson would appear at a branch of First National Bank, and there he made it clear that he'd a check made out to him, which he innocently presented

to open a new bank account—"from State Farm," he represented.

The check was numbered familiarly, same as the prior one for $135 that he'd been given when this saga'd just begun. And it was for $6,289, a unique and memorable amount. The bank obligingly took the check and opened a new account. "Welcome our new customer!" a greeting that we'd bet

the bank would come to think of with a measure of regret.

Never thinking that appellant's check might have a minor flaw

(like perhaps being a forgery), it allowed him to withdraw several thousand dollars and, days later, a few thousand more; he'd taken over $5,000 before the bank would learn the score. There was no evidence appellant seemed the least bit nervous, having picked a branch with such unmatched customer service.

Of course the crime soon came to light, as agents of State Farm

refused to pay the check he'd forged, which forestalled further harm:

"It's not from us, there is no claim, the check we cannot honor!"

And appellant's scheme was thus undone—he knew he was a

goner.

When braced, he paid the money back, a mitigating solution,
but despite this act, the Commonwealth commenced its prosecution.

Convicted of the forgery, insurance fraud,[2] and theft,
he admits the first and last, but denies the charge that's left.
He claims the sentence for insurance fraud is most certainly
amiss—
he says "I may be guilty, but I'm just not guilty of this.
My sentence is inappropriate—undo the wrongful conviction."
And in the end, seeks this relief from our appellate jurisdiction.

Our standard of review's *de novo;* our scope will be plenary.
And upon reviewing what Goodson's done, it takes not long to
see
his argument is legally sound, its merits clearly true,
and so it falls to us to expeditiously undo
the sentence for insurance fraud that was affirmed below
for the elements just aren't made out, a closer look will show.

We find the elements of the statute are not proved in
Goodson's case.
No insurance claim was instituted, by writing or face-to-face.
Goodson gave nothing to an insurer, and what he gave the
bank exec
was neither "statement" nor "insurance claim"—it simply was
a check.
That's not to say appellant's acts are free from any blame,
it's just they're neither part nor parcel of an insurance claim.

The prosecution says the check is linked "inexorably"
to the January claim, by check amount, its number, and payee.
Though such particulars indicate some shared genealogy

---

2. The offense of insurance fraud occurs when a person:

[k]nowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S. § 4117(a)(2).

'tween January and July, still they're branches of a different tree.
His first claim was legitimate and, resemblances notwithstanding,
he later passed a counterfeit check, no insurance coverage demanding.

Just because the bogus check shows an insurance company's name
doesn't make the crime insurance fraud—it's simply not the same.
A check may seem a statement that State Farm owed him the dough
but that assumption by the bank isn't false insurance info,
or evidence that's material to a claim involving State Farm—
there's no new claim and the old claim's gone—this was a different harm.
One must ask when parsing the crime, what was the legislative intent?
In creating such a focused crime, is counterfeiting what they meant?
Were they targeting specific fraud unique to insurance firms,
or is this a broad and sweeping crime, a can of felonious worms?
It is the former, being so specific—who must give what to whom—
and dressing up the facts won't make them fit in this costume.

Because he made no insurance claim, nor a proffer to an insurer,
he didn't commit insurance fraud, and neither judge nor juror
can to the contrary rightly find, even if they'd like to.
Two crimes are strikes, but not the third—the count is but strike two,
and while those strikes are such that he's not going to walk,
on this last pitch we have no choice but to call a figurative balk.

Sentenced on the other crimes, he surely won't go free,
but we find he can't be guilty of this final felony.
Convictions for the forgery and theft are approbated—

the sentence for insurance fraud, however, is vacated.
The case must be remanded for resentencing, we find,
so the trial judge may impose the result he originally had in mind.
What Goodson did is serious, but doesn't comprise this crime—
there's simply no rhyme nor reason for it, for these reasons (and in rhyme).

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justice BAER joins the opinion.

Justices TODD and McCAFFERY concur in the result.

Justice SAYLOR files a dissenting opinion in which Chief Justice CASTILLE joins.

Justice SAYLOR, dissenting.

As the lead Justices explain, Section 4117 of the Crimes Code defines insurance fraud to include:

Knowingly and with the intent to defraud any insurer ..., *present[ing] or caus[ing] to be presented* to any insurer ... any *statement* forming a part of, or in support of, a *claim* that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S. § 4117(a)(2) (emphasis added).

In the first instance, the lead opinion appears to indicate that there was no presentation to an insurer. *See* Opinion Announcing the Judgment of the Court ("OAJC"), *op.* at 336, 33 A.3d at 613–14 ("Because he made no insurance claim, *nor a proffer to an insurer,* he didn't commit insurance fraud[.]" (emphasis added)). While it may be true that Appellant did not directly present the counterfeit instrument to State Farm, by tendering it to First National Bank he certainly "cause[d it] to be presented" to the insurer. 18 Pa.C.S. § 4117(a)(2); *see* OAJC, *op.* at 334, 33 A.3d at 613 (explaining that "agents of State Farm refused to pay the check [Appellant had] forged").

Second, the lead Justices determine that Appellant made no insurance claim. *See id.* at 336–37, 33 A.3d at 614. However, Appellant acknowledges that he did make an "underlying insurance claim," Brief for Appellant at 23, and the lead opinion otherwise recognizes as much. *See OAJC, op.* at 333–34, 33 A.3d at 612.

In my view, this appeal turns on whether the forged check Appellant caused to be presented to State Farm for payment constitutes a "statement" under Section 4117(a)(2), in which context "statement" is broadly defined to encompass:

> Any oral or written presentation or other evidence of loss, injury or expense, including, but not limited to, any notice, statement, proof of loss, bill of lading, receipt for payment, invoice, account, estimate of property damages, bill for services, diagnosis, prescription, hospital or doctor records, X-ray, test result or computer-generated documents.

18 Pa.C.S. § 4117(*l*). In light of this intentionally sweeping, non-exclusive definition, I find substantial resonance in the Commonwealth's position that the presentation of a forged check duplicating the amount of an already-paid obligation on an insurance claim represents a "statement that [State Farm] owed him this money, a statement which was completely false and directly concerned an insurance claim." Brief for Appellee at 9; *see also id.* ("This was, plain and simply, an attempt by Goodson to get far more money from an insurance claim than he deserved by presenting a fraudulent check for a duplicate amount and effectively make State Farm pay twice on the same claim.").

Appellant indisputably designed to perpetrate fraud on an insurance company, and the artifice he employed was to mimic an amount previously tendered on his insurance claim. In light of the above, and like the Commonwealth, I have difficulty appreciating why this is not insurance fraud, under the broad statutory definitions.

Chief Justice CASTILLE joins this dissenting opinion.